IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL FITZPATRICK,<br><br>Defendant. | CRIMINAL NO. GLR-24-338 |

**GOVERNMENT'S RESPONSE TO MOTION TO DISMISS
THE INDICTMENT UNDER THE SECOND AMENDMENT**

The United States, by and through its undersigned counsel, respectfully opposes defendant Michael Fitzpatrick's motion to Dismiss the Indictment Under the Second Amendment (ECF 20). The defendant is lawfully prohibited from possessing firearms because his predicate conviction for conspiracy to commit theft, though labeled a misdemeanor by Maryland, carries a penalty of 15 years' imprisonment, making it sufficiently serious to warrant firearms prohibition under federal firearms law.

Fourth Circuit precedent and the State of Maryland's own gun laws show a convict's gun rights hinge on the seriousness of the offense, as demonstrated by the maximum penalty that offense carries. The Court should reject the defendant's invitation to elevate the State's choice of terminology over the seriousness of the offense and deny the defendant's Second Amendment claim.

I.  **Legal Background**

Under 18 U.S.C. § 922(g)(1), it is unlawful for any person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" to possess firearms or ammunition. The statute does not use the term "felon," but instead focuses objectively on the maximum authorized punishment for the offense.

The Fourth Circuit has consistently upheld the constitutionality of § 922(g)(1) against Second Amendment challenges. In *United States v. Hunt*, 123 F.4th 697 (4th Cir. 2024), the court held that its post-*Heller* and pre-*Bruen* decisions on § 922(g)(1) challenges "remain binding" after the Supreme Court's decisions in *Bruen* and *Rahimi*. *Hunt*, 123 F.4th at 702. When discussing these challenges, the Fourth Circuit has used the term "felon" to refer to persons who have been convicted of a crime punishable by imprisonment for a term exceeding one year.

In *Hamilton v. Pallozzi*, 848 F.3d 614 (4th Cir. 2017), the court concluded that "a conviction of a felony necessarily removes one from the class of 'law-abiding, responsible citizens' for the purposes of the Second Amendment." *Id*. at 626. The court emphasized that the sovereign's judgment about the seriousness of the offense, as reflected in the authorized penalty, is "dispositive." *Id*. at 627.

Thus, while *Hamilton* "left open the possibility" that persons convicted of crimes labeled as misdemeanors might potentially succeed in an as-applied challenge, the court emphasized that this determination would rest on the sovereign's judgment about the seriousness of the offense as reflected in the authorized penalty.

Additionally, *Hunt* provided an alternative holding applying *Bruen's* two-part framework. The court explicitly stated: "In addition—and in the alternative—we hold that Section 922(g)(1) would survive Second Amendment scrutiny even if we had the authority to decide the issue anew." *Hunt*, 123 F.4th at 700. Under this alternative analysis, the court held that § 922(g)(1) would be constitutional based on two historical traditions: (1) disarming those who have demonstrated disrespect for legal norms of society, and (2) disarming categories of persons who present a risk of dangerousness. *Id*. at 706-07.

II. **Argument**

A. **Predicate Status Turns on the *Seriousness* of the Offense, Not State Terminology**

The defendant argues that he falls outside § 922(g)(1)'s prohibition because his only qualifying predicate conviction is a Maryland misdemeanor. He relies on *Hamilton v. Pallozzi*, which "left open the possibility" that persons convicted of crimes labeled as misdemeanors "may still potentially succeed" in showing they are "law-abiding, responsible citizens" who retain Second Amendment rights. 848 F.3d 614, 626 n.11 (4th Cir. 2017). The defendant contends that because *Hunt* held *Hamilton* "remains binding," 123 F.4th at 700, and because his conspiracy to commit theft offense is non-violent and classified as a misdemeanor under Maryland law, this Court should find the statute cannot constitutionally be applied to him.

First, § 922(g)(1) focuses on the seriousness of the offense as measured by its maximum punishment, not on how a state labels the crime. The statute applies to any person convicted of "a crime punishable by imprisonment for a term exceeding one year," making no distinction between offenses labeled as felonies or misdemeanors. Congress deliberately chose this objective criterion rather than relying on varying state classifications.

Second, when the Fourth Circuit in *Hunt* and other cases refers to "felons" in discussing § 922(g)(1), it is using that term as shorthand for persons convicted of crimes punishable by imprisonment for more than one year—precisely the category described in the statute. The court's use of "felon" does not import state-law distinctions between felonies and misdemeanors into the federal statute.

Third, the defendant's conspiracy to commit theft offense carried a maximum penalty of 15 years' imprisonment under Maryland law. Md. Code Ann., Crim. Law § 7-104(g)(i) (2002). This substantial potential sentence demonstrates Maryland's judgment about the seriousness of the

offense, regardless of its classification as a misdemeanor. For purposes of Second Amendment analysis, the defendant was convicted of what is functionally equivalent to a "felony" despite Maryland's labeling.

### B. *Hunt's* Alternative *Bruen* Analysis Closed the Narrow Window Left Open by Hamilton

While *Hamilton* left open a narrow possibility for as-applied challenges by certain misdemeanants, Hunt's alternative holding under *Bruen* effectively closed this window. *Hunt* provided a comprehensive historical analysis establishing that § 922(g)(1) is constitutional as applied to all persons convicted of serious offenses, regardless of state classification.

Importantly, *Hunt's Bruen* analysis is not dicta but an "alternative" holding, as the court itself explicitly stated: "In addition—and in the alternative—we hold that Section 922(g)(1) would survive Second Amendment scrutiny even if we had the authority to decide the issue anew." 123 F.4th at 700. This alternative holding has precedential value and binds this Court.

In this alternative analysis, Hunt identified two historical justifications for disarming persons convicted of serious crimes: (1) legislatures traditionally could "disqualify categories of people from possessing firearms to address a danger of misuse by those who deviated from legal norms," and (2) legislatures could disarm particular people "to address a risk of dangerousness." *Hunt*, 123 F.4th at 706.

Both these justifications apply equally to persons convicted of serious misdemeanors carrying substantial penalties. The determining factor is the seriousness of the offense as reflected in its punishment, not whether the state labeled it a felony or misdemeanor. As *Hunt* explained, "just as early legislatures retained the discretion to disarm categories of people because they refused to adhere to legal norms in the pre-colonial and colonial era, today's legislatures may

disarm people who have been convicted of conduct the legislature considers serious enough" to warrant substantial punishment. *Id*. at 707.

Moreover, *Hunt* explicitly held that "there is no requirement for an individualized determination of dangerousness as to each person in a class of prohibited persons" and "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *Id*. at 707-08. These principles apply with equal force to serious misdemeanors carrying penalties exceeding one year imprisonment.

### C. Maryland's Own Gun Laws Are Not Concerned With the Misdemeanor/Felony Distinction

Fitzpatrick's reliance on Maryland's misdemeanor classification is in direct opposition to the reality of Maryland's criminal code. In Maryland, serious crimes that would be felonies in most other jurisdictions are often classified as misdemeanors, despite carrying substantial penalties. This classification scheme demonstrates why the label "misdemeanor" alone cannot determine whether an offense is serious enough to justify firearm prohibitions.

Under Maryland law, inchoate crimes, such as conspiracy and attempt crimes, have historically been classified as misdemeanors. *Johnson v. State*, 362 Md. 525, 528 (2001); *United States v. Kelly*, 989 F.2d 162, 163 (4th Cir. 1993). Even conspiracy to commit murder is a misdemeanor. *Washington v. State*, 450 Md. 319, 333–34 (2016). Thus, under Maryland law, convictions for conspiracy often carry penalties far exceeding one year imprisonment. For example, although second-degree assault is classified as a misdemeanor, it carries a maximum penalty of 10 years' imprisonment. MD Criminal Law Code § 3-203 (2024). Threats of mass violence, another misdemeanor, carries penalties of up to 10 years for first offenders and 15 years for subsequent offenders. MD Criminal Law Code § 3-1001 (2024). Other serious Maryland misdemeanors include stalking (up to 5 years) MD Criminal Law Code § 3-203 (2024), reckless

endangerment (up to 5 years) MD Criminal Law Code § 3-204 (2024), and certain theft offenses (up to 5 years) MD Criminal Law Code § 7-104(g)(4).

Notably, Maryland law prohibits firearm possession by persons convicted of certain misdemeanors, including all of those referenced above. Under Maryland Public Safety Code § 5-101, "disqualifying crimes" for firearm possession include misdemeanors punishable by imprisonment for more than 2 years. Thus, Fitzpatrick's prior Maryland conviction disqualifies him from possessing firearms *even in Maryland*, demonstrating that Maryland law is concerned with the possible penalty an offense carries, and not the arcane label or classification. This directly contradicts the defendant's assertion that Maryland's misdemeanor classification represents a judgment that an offense is not serious enough to justify disarmament.

Fitzpatrick's conspiracy to commit theft offense carried a maximum penalty of 15 years—higher than many of these serious misdemeanors that themselves trigger firearm prohibitions. This demonstrates that Maryland considered the defendant's offense serious enough to warrant substantial punishment and firearm restrictions, regardless of its technical classification as a misdemeanor.

### D. **Historical Record Supports the Statute's Constitutionality as applied to the Defendant**

The historical record, when viewed through *Rahimi*'s principles-based approach, provides no sound basis for drawing distinctions among serious offenses based merely on their state-law classification as misdemeanors versus felonies. As the Eighth Circuit explained in Jackson, "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." 110 F.4th at 1125. Following Supreme Court guidance in other contexts, courts should rely on the maximum penalty authorized by the legislature, which provides an "objective indication of the seriousness with which society regards the offense." *Lewis v. United States*, 518 U.S. 322, 328 (1996).

The defendant suggests that § 922(g)(1) cannot constitutionally be applied to him because his conspiracy to commit theft offense is non-violent. This argument fails. The Fourth Circuit has "joined its sister circuits in holding that application" of § 922(g)(1) "to allegedly non-violent felons...does not violate the Second Amendment." *Pruess*, 703 F.3d at 247. Even more relevant to this case, the Fourth Circuit has upheld a felon-dispossession law as applied to a person convicted of fraud and theft offenses. *See Hamilton*, 848 F.3d at 618, 627.

Some opinions from other circuits have suggested that § 922(g)(1) can only be constitutionally applied to persons who are presently dangerous or have committed offenses linked to violence. That minority view, however, conflicts with persuasive decisions of the Eighth, Tenth, and Eleventh Circuits and has not been adopted in this Circuit. Moreover, many of these opinions have been vacated or remain subject to *en banc* proceedings.

Even if this Court were to "assume for the sake of argument that there is some room for as-applied challenges to Section 922(g)(1)" under a history-and-tradition test, such an assumption would not assist the defendant. *Canada*, 103 F.4th at 258 (quoting *Gay*, 98 F.4th at 846). As explained in *Hunt*, historical tradition establishes at least two separate principles that support disarmament of serious offenders—one based on the seriousness of the offense and the other based on categorical legislative judgments about dangerousness.

The defendant could be disarmed under either principle: His disqualifying conviction for conspiracy to commit theft carries a 15-year maximum sentence, demonstrating Maryland's judgment about its seriousness. The nature of the offense—conspiring to steal motorcycles and motorcycle parts—indicates that the legislature reasonably concluded persons convicted of such crimes would pose a risk if armed. The Fourth Circuit made clear in *Hunt* that "there is no

requirement for an individualized determination of dangerousness as to each person in a class of prohibited persons." 123 F.4th at 707.

Additionally, the defendant has failed to offer the Court a historically principled or judicially administrable basis for assessing dangerousness on a case-by-case basis. As the Eighth Circuit correctly noted, even "[i]f the historical regulation of firearms possession is viewed...as an effort to address a risk of dangerousness," then "the prohibition on possession by convicted felons still passes muster under historical analysis." *Jackson*, 110 F.4th at 1127-28.

### III.   Conclusion

Fitzpatrick's motion to dismiss should be denied because § 922(g)(1)'s application turns on the seriousness of an offense as reflected in its authorized punishment, not on a state's labeling choice. Maryland's 15-year maximum sentence for the defendant's conspiracy to commit theft offense objectively demonstrates its gravity, regardless of the "misdemeanor" designation. The narrow window *Hamilton* left open for certain misdemeanants does not extend to offenses with such substantial penalties, and *Hunt's* historical analysis provides additional support for the statute's constitutionality in this case.

Respectfully Submitted,

Kelly O. Hayes
United States Attorney

/s/
_____

Paul Budlow
Assistant United States Attorney
Jacob Gordin
Special Assistant U.S. Attorney
District of Maryland