## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN THE MATTER OF THE APPLICATION | : | |
| OF THE UNITED STATES OF AMERICA | : | |
| FOR A SEARCH WARRANT FOR | : | **FILED UNDER SEAL** |
| PAPER FILES, DOCUMENTS, COMPUTERS | : | |
| AND ELECTRONIC DEVICES IN THE | : | |
| CUSTODY OF ATF AND THE HOWARD | : | 17 - 3 1 5 2 - ADC |
| COUNTY POLICE DEPARTMENT, AND | : | |
| CELL PHONE COMMUNICATIONS IN THE | : | 17 - 3 1 5 3 - ADC |
| CUSTODY OF VERIZON WIRELESS | : | |

## AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR SEARCH AND SEIZURE WARRANTS

Your affiant, Clare Jeppi, Special Agent with the United States Department of the Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), submits this affidavit in support of search warrants for (1) the paper files and documents, computers, and electronic devices, further described in Attachment A-1, for the items identified in Attachment B-1; and (2) information concerning the telephone call number (443) 869-1647 stored by Verizon Wireless, as described in Attachment A-2, for information identified in Attachment B-2.

1.      Your affiant has personally participated in the investigation set forth below. Your affiant is familiar with the facts and circumstances of the investigation through her personal participation; from discussions with investigators of the Howard County Police and Fire Departments, the Howard County Office of the Fire Marshal, and other law enforcement and fire officials; from information obtained through law enforcement interviews of witnesses with knowledge of certain information related to this investigation; and from her review of records, reports, recordings, and other evidence relating to the investigation. Since this affidavit is being submitted for the limited purpose of securing a search warrant for files, documents, computers, and electronic devices, your affiant has not included details of every aspect of the investigation.

Rather, your affiant set forth only those facts that she believes are necessary to establish probable cause. The information contained in this affidavit is based upon your affiant's personal knowledge, her review of documents and other evidence, and her conversations with other law enforcement officers, and other individuals.

2.     Your affiant knows, pursuant to Title 18, United States Code, Section 844(i),(n), that it is unlawful for any person to maliciously damage or destroy by means of fire any building or vehicle used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce, or to conspire with others to do so.

3.     Your affiant knows, pursuant to Title 18, United States Code, Section 844(h),(m), that it is unlawful for any person to use fire to commit any felony that may be prosecuted in federal court, or to conspire with others to so.

4.     Your affiant knows, pursuant to Title 18, United States Code, Sections 1343 and 1349, that is is unlawful for any person to transmit or cause to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing a scheme or artifice to defraud, having devised or intended to devise such a scheme, or to conspire with others to do so.

5.     Your affiant knows, pursuant to Title 18, United States Code, Section 922(g), that it is unlawful for any person who has been convicted of a crime punishable by imprisonment for a term exceeding one year, to possess in or affecting interstate commerce, any firearm or ammunition, or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

6.     Based upon your affiant's training and experience, participation in this and other arson and firearms investigations, as well as her conversations with other agents, your affiant

USAO-000466

Rather, your affiant set forth only those facts that she believes are necessary to establish probable cause. The information contained in this affidavit is based upon your affiant's personal knowledge, her review of documents and other evidence, and her conversations with other law enforcement officers, and other individuals.

2.      Your affiant knows, pursuant to Title 18, United States Code, Section 844(i),(n), that it is unlawful for any person to maliciously damage or destroy by means of fire any building or vehicle used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce, or to conspire with others to do so.

3.      Your affiant knows, pursuant to Title 18, United States Code, Section 844(h),(m), that it is unlawful for any person to use fire to commit any felony that may be prosecuted in federal court, or to conspire with others to so.

4.      Your affiant knows, pursuant to Title 18, United States Code, Sections 1343 and 1349, that is is unlawful for any person to transmit or cause to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing a scheme or artifice to defraud, having devised or intended to devise such a scheme, or to conspire with others to do so.

5.      Your affiant knows, pursuant to Title 18, United States Code, Section 922(g), that it is unlawful for any person who has been convicted of a crime punishable by imprisonment for a term exceeding one year, to possess in or affecting interstate commerce, any firearm or ammunition, or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

6.      Based upon your affiant's training and experience, participation in this and other arson and firearms investigations, as well as her conversations with other agents, your affiant

USAO-000467

knows the following:

      a.    Persons who commit or conspire to commit arson often do so to collect on fraudulent insurance claims and will remove items of value, both financial and sentimental (such as computers, electronics, expensive vehicles, family photographs, awards, certificates, furniture, and other household items), from the property to be destroyed, and will do so to alleviate personal or commercial debt;

      b.    Persons who commit or conspire to commit arson for profit or to defraud, or have knowledge of such acts, often maintain in paper files and electronic storage media, financial records and financial instruments related to their crime and the profits derived from those acts and transactions, including, but not limited to, currency, bank checks, cashier's checks, Western Union receipts, money orders, stocks, bonds, precious metals, and real estate records;

      c.    Persons who commit or conspire to commit arson for profit or to defraud, or have knowledge to such acts, maintain in paper files and electronic storage media, records of their financial transactions, including, but not limited to, books, ledgers, records and other documents relating to their residences, businesses, bank accounts, credit cards, tax records, and financial correspondence.  Such documents are frequently stored where the persons have ready access to them, including in their homes and vehicles;

      d.    Persons who commit or conspire to commit arson for profit or to defraud, or have knowledge of such acts, commonly maintain books, records and other documents that identify and contain the names, addresses and/or telephone numbers of associates in their fraud or criminal activities, in locations including, but not limited to, address books, telephone books, rolodexes, telephones or personal digital assistants with stored information, notes reflecting telephone numbers, photographs (to include still photos, negatives, movies, slides, video tapes, digital video

3

USAO-000468

discs, undeveloped film, memory cards, and digital image and video files), computers, tablets, cell phones, and other digital electronic devices;

        e.    Persons who commit or conspire to commit arson for profit or to defraud, or have knowledge of such acts, commonly maintain identification and travel documents, including, but not limited to, tickets, transportation schedules, passports, notes and receipts related to travel, and motel/hotel receipts;

        f.    Persons who commit or conspire to commit arson for profit or to defraud, or have knowledge of such acts, typically store or maintain indicia of occupancy, residency and/or ownership of the premises and/or vehicles to be searched, and are often present in such premises; and

        g.    Persons who possess firearms and ammunition but are prohibited by law from doing so typically store firearms, ammunition, and firearms parts and components inside combination or key lock safes or strong boxes, suitcases, locked cabinets and other types of locked or closed containers, or hidden compartments, which are secreted in locations where they may keep these items secure, concealed, or otherwise inaccessible to law enforcement.

## BACKGROUND AND EXPERIENCE

        7.    Your affiant has been a Special Agent for the ATF since February 2000.  In April 2000, your affiant attended the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia, where your affiant was taught and trained in the fields of criminal law, constitutional law, and federal court procedures.  In the summer of 2000, your affiant attended the New Professional Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia and was specifically trained in the fields of arson, explosives, and federal firearms laws and violations.  Prior to this, from May 1996 until February 2000, your

USAO-000469

affiant was an Immigration Agent for the United States Immigration and Naturalization Service in Philadelphia, Pennsylvania. For this position, your affiant attended the Immigration Officer Basic Training Course at the Federal Law Enforcement Training Center, and was also taught and trained in the areas of federal criminal law and violations.

8.      From the time your affiant returned from ATF training at the Federal Law Enforcement Training Center in September 2000, until the present day, your affiant has been assigned to ATF's Baltimore Field Division to conduct and assist investigations involving firearms, narcotics, arson and explosives. Throughout most of her tenure as a Special Agent in the Baltimore Field Office, your affiant has been assigned to several enforcement groups in Baltimore and Prince George's Counties, in which the primary focus of these investigations was firearms and narcotics trafficking. Your affiant has served as the case agent for numerous investigations that have included adopted firearms cases from state and local agencies as well as more complex investigations involving illegal firearms possession, armed narcotics traffickers, and burglaries of Federal Firearms Licensees (FFLs). Your affiant has worked with several informants who engaged in controlled narcotics and firearms purchases for the purpose and support of these investigations. Your affiant has been responsible for the control and handling of informants and witnesses, monitoring controlled purchases or "buys," and collecting the evidence subsequent to these purchases. Your affiant has also participated in several arson and explosives investigations since her tenure began with the ATF. In 2015, your affiant was assigned to the Baltimore Field Division's Arson & Explosives Group whereby your affiant has been appointed to serve as the case agent or participant on several investigations under those purviews. Your affiant's experience in the Baltimore Field Division's Arson & Explosives Group has included supervisory roles within the group, fire scene processing, evidence collection, witness interviews, and other investigative

5

tools in support investigations involving arson and explosives. Your affiant's testimony has been accepted by the courts of the United States of America and has resulted in convictions of persons for violations of federal laws.

## PROBABLE CAUSE

The following circumstances are offered as probable cause:

9.      On March 10, 2017, at approximately 2355 hours, Howard County 911 received multiple calls reporting a fire at 11910 Emerald Court, Ellicott City, Howard County, Maryland 21042. Responding firefighters encountered a single family home fully engulfed in flames. The cause of the fire is undetermined at this time. The structure was deemed uninhabitable. Michael Fitzpatrick ("FITZPATRICK") was identified as the homeowner. This information was verified through Maryland Department of Assessments & Taxation - Real Property. A short time after the fire, FITZPATRICK arrived at the scene and was interviewed by investigators. FITZPATRICK was utilizing crutches and had a cast on his left leg. He advised that he recently had surgery on his foot on March 9, 2017.

10.     Howard County Police Detective Marc Delbusso interviewed FITZPATRICK while at the scene of the fire. FITZPATRICK stated that he left the residence on March 9, 2017, at approximately 0930 hours, for his scheduled surgery. Subsequent to his surgery, he was picked up by his fiancé, Linda Rabinovich. Due to the surgery, and for his recovery, FITZPATRICK made arrangements with Rabinovich to stay at her home for approximately one week (7 days). FITZPATRICK denied having any major problems with his home but did advise that the circuit breaker would "trip" in his home office. FITZPATRICK owns three dogs, two of which he dropped off at his ex-wife's (Allison Fitzpatrick) home, and the third dog was brought to Rabinovich's residence prior to the surgery. FITZPATRICK stated that he had a Nest Thermostat

6

USAO-000471

(Wi-Fi) and Nest Smoke Detector (Wi-Fi) installed in his home, the scene of the fire. FITZPATRICK voluntarily showed investigators his cell phone screen displaying the Nest application, which allows users to operate and monitor Nest systems remotely. As he handed his phone to investigators, he expressed confusion and advised police he was unsure of how to utilize the application. Investigators noted a message displayed on March 10 that read: "Offline." When the "Offline" message was accessed, investigators noted the system went "Offline" at approximately 1900 hours, approximately five hours before the fire.

11.    On March 11, 2017, Howard County Police Detective Scott Heaster interviewed Allison Fitzpatrick, FITZPATRICK's ex-wife. Ms. Fitzpatrick advised, among other things, that the couple owned a vacation home in the Smith Mountain Lake area, and provided the address to the police as 300 Indian Ridge Drive, Moneta, Virginia 24121. Ms. Fitzpatrick advised the detective of how the transaction occurred that ultimately turned the property over to FITZPATRICK after their divorce, and called this home the "stolen" house because of the trickery she claimed occurred. Additionally, she advised Detective Heaster that FITZPATRICK had brought her a dresser from the residence on Emerald Court a few weeks ago and, when he did, he dropped off a large stack of family photographs from the residence on Emerald Court. Ms. Fitzpatrick found this odd due the two of them having argued over the photographs when they were going through the divorce.

12.    On March 12, 2017, Detective Delbusso interviewed FITZPATRICK at Rabinovich's home. At that time, FITZPATRICK gave investigators written consent to access his trailers and detached garage located on Emerald Court. While speaking with Detective Delbusso, FITZPATRICK asked, "Was it electrical?" (referring to the cause of the fire). Detective Delbusso asked FITZPATRICK to show him his Nest (Wi-Fi Thermostat) application on his cell phone.

7

FITZPATRICK voluntarily complied.  Detective Delbusso noticed there was no longer an "Offline" message, as previously viewed.

13.    Later that evening, and pursuant to the consent search, Detective Delbusso and other investigators located a computer (tower unit), printer, and computer monitor in the detached garage (pole barn) to the rear of the property at 11910 Emerald Ct. Ellicott City, Maryland.  These items were not set up, connected, or receiving power, and they were located on the cement floor to the rear of the detached garage.  The outbuilding was not set up for an office.

14.    Detective Delbusso received consent from FITZPATRICK to search his trailer that was parked on the driveway towards the back of the house, and in front of the aforementioned detached garage/pole barn.  A search of the trailer resulted in the recovery of a manufactured AR-15 style rifle, having a Juggernaut Tactical Model JT-15 lower receiver.  Also located in the trailer was a shipping box with a shipping label affixed to the top addressed to FITZPATRICK at the Emerald Court address, containing several smaller boxes of TulAmmo (Tula Cartridge) .223 rounds of ammunition.

15.    The following morning, on March 13, 2017, your affiant interviewed Jonathan Weizman, an employee at FITZPATRICK's business, who advised that the firearm was his, and he built the firearm with a tool located in FITZPTRICK's garage.  Weizman provided a written statement attesting to this, but also advised that he and FITZPATRICK had an agreement that if he (Weizman) built the firearm and FITZPATRICK purchased the ammunition, FITZPATRICK could shoot the firearm.  Weizman added in his statement that he and FITZPATRICK have gone shooting with that firearm in Moneta, Virginia during race weekends.  It is important to note that, during a previous interview on March 12, 2017, Weizman advised your affiant and ATF Special

USAO-000473

Agent Daniel Giblin that he and FITZPATRICK would spend the night at the lake house in Moneta, Virginia on weekends they would go to the racetrack.

16.    On March 13, 2017, Linda Rabinovich (FITZPATRICK's fiancé) contacted Detective Delbusso and advised that she recently discovered items in her home belonging to FITZPATRICK.  Rabinovich advised Detective Delbusso that she was cleaning out a closet located in her computer room or home office.  She located additional clothing belonging to FITZPATRICK, which surprised her because FITZPATRICK was only supposed to stay at her home for about a week after his surgery.  Rabinovich looked around the office where FITZPATRICK had set up his work computers for the week.  Rabinovich photographed a "Spreadsheet-style" document on FITZPATRICK's computer which displayed some of FITZPATRICK's financial liabilities and outstanding bills.  Based on the information on the spreadsheet, it appeared that FITZPATRICK owes approximately $1,000,000 to various creditors. Rabinovich located a black folder with FITZPATRICK's initials on the front containing sentimental pictures of FITZPATRICK's children when they appeared to be approximately 8-10 years old and handmade holiday cards from his children that appeared to be several years old. Rabinovich located a bill from the Internal Revenue Service (IRS) revealing that FITZPATRICK owed over $118,000 as well as multiple computers and related equipment, including a tower unit, tablet, portable external hard drive, tower unit hard drive, and SD cards.

17.    On March 14, 2017, Detectives from the Howard County Police Criminal Investigations Section and an ATF agent responded to Linda Rabinovich's residence per her request.  Rabinovich provided a statement regarding her relationship with FITZPATRICK, and certain events involving FITZPATRICK.  Rabinovich advised that on March 11, 2017, she witnessed FITZPATRICK participate in a phone call with Allstate Insurance regarding a fire

9

insurance claim. Rabinovich described FITZPATRICK as having "fake tears" when speaking with

the Allstate representative. FITZPATRICK had also recently removed his home television, a large

amount of bakeware or cookware, and his home wireless speaker sound system from the Emerald

Court house and took these items to Rabinovich's home. Rabinovich advised she did not request

any of the above listed items from FITZPATRICK. Additionally, FITZPATRICK brought over

several large-screen computer monitors, files and documents, along with men's suits, movies and

other items inconsistent with short stay for recovery following surgery. Rabinovich also advised

investigators that she went to the gun range with FITZPATRICK on various occasions. She

advised that FITZPATRICK brought several firearms with him, including long guns and

handguns, which were in the trunk of his car. Rabinovich added that FITZPATRICK brought the

ammunition with him that corresponded to the firearms he brought. She added that she and

FITZPATRICK shot the guns at stuffed animals and water bottles.

18.    On March 14, 2017, with her consent, Detectives seized several items from

Rabinovich's residence, to include: an external hard drive (serial NA7EN786 / HCPD Evidence

#5730-03), Toshiba Satellite laptop L15W-B1302 (serial number 2F038030S / HCPD Evidence

#5730-09), Blue Fujifilm XP camera (serial number 4TB20697 / HCPD Evidence #5730-10),

Sandisk 8 gigabyte SD card (HCPD Evidence #5730-05), black tower computer (HCPD Evidence

#5730-04), along with multiple USB, SD, and other memory drives per her request and consent.

These items were secured and transferred from the custody of the Howard County Police to the

Bureau of Alcohol, Tobacco, Firearms, & Explosives for forensic analysis. Additionally, on this

same date, with Rabinovich's permission and consent, investigators seized one box of books and

pictures (HCPD Evidence 5730-06), one (1) box and one (1) bag of miscellaneous papers HCPD

Evidence #5730-07 and 5730-08), one black leather zipper binder (HCPD Evidence # 5730-01),

USAO-000475

and one backpack (HCPD Evidence # 5730-02). These items were secured at the Howard County

Police Station and/or the ATF Evidence Vault in preparation for a search and seizure warrant.

Additionally, on the evening of March 14, 2017, the Howard County Police Department seized a

black leather portfolio with documents (HCPD Evidence # 5730-15) and a red backpack with

personal items (HCPD Evidence # 5730-24).

19.    On that same date, FITZPATRICK was arrested for illegally possessing a regulated

firearm and ammunition, in reference to the aforementioned recovery from FITZPATRICK's

trailer. After he was transported to a Howard County police station and advised of his Miranda

rights, FITZPATRICK agreed to speak with your affiant and Detective Delbusso. At the onset of

the interview, and advising him of his prohibited status and reason for arrest, FITZPATRICK

ultimately admitted to shooting the firearm at a range and purchasing the ammunition that was

recovered from his trailer. FITZPATRICK denied shooting several different types of firearms as

indicated by Rabinovich. FITZPATRICK advised that he researched the legality of purchasing

ammunition but was unaware of the fact that his prohibited status applies to ammunition. He also

advised that he was attempting to get his record fixed (expunged) with his attorney, acknowledging

he knew he had a prohibiting criminal history involving firearms. When asked about what items

he brought to Rabinovich's home, FITZPATRICK stated that he only kept a shaving kit and some

clothes at her home. When asked why he had a folder or padfolio containing children's pictures

and cards, he responded that he took them everywhere, even on vacation.

20.    Detective Delbusso asked FITZPATRICK to describe his current financial

situation, and FITZPATRICK advised "good" and made no indication that he or his business was

in financial distress. When investigators confronted him with the $118,000 IRS tax bill, he first

suggested that the bill may be fraudulent, and he later acknowledged he has not filed tax returns

11

USAO-000476

for the last few years. FITZPATRICK advised he owns a single family home in Virginia and two Acura NSX race cars (valued at approximately $150,000), which he normally stores in a two-car garage attached to the house on Emerald Court. FITZPATRICK admitted to relocating the Acura NSX racecars to his detached garage, which was left unscathed in the fire. He acknowledged the race cars were moved out of his garage a few days prior to the house fire. Detective Delbusso asked if he had moved any of his lake house property in Moneta, Virginia, and he advised he does not go to the Moneta, Virginia very often in the winter. FITZPATRICK advised that he made two trips to that location (over the past two months) to move his "outdoor" porch furniture from the residence on Emerald Court to the Moneta residence. FITZPATRICK also advised that he moved a leather couch, originally stored in the basement at Emerald Court to the Moneta residence.

21.    On or about March 15, 2017, local law enforcement investigators assisting with the investigation contacted neighbors of FITZPATRICK at the Moneta residence. A neighbor advised that FITZPATRICK does not normally stay at the Moneta, Virginia residence in the winter. This neighbor advised he has recently observed FITZPATRICK make trips to the home, within previous weeks before the fire. The neighbor advised he observed "trucks and trailers" at the residence, and the neighbor specifically stated this behavior was "not normal."

22.    On or about March 19, 2017, investigators interviewed Rabinovich who advised that she recently communicated with FITZPATRICK via text, and he asked her "test questions" in an effort to ensure he was speaking to her and not the police. During these texts, FITZPATRICK advised her that he hid money in her sweater drawer at her residence. Rabinovich looked in the drawer and advised she found a pair of surgical socks stuffed with several packages or envelopes of money. Rabinovich stated there were several packages stacked, each labeled "5k." Based on the labeling, she estimated that the packages contained approximately $40,000 to $50,000.

USAO-000477

Rabinovich advised FITPZATRICK she would return it to him via courier; however, she was keeping a portion of it for a Cartier watch that was missing that she believed he took from her. FITZPATRICK agreed to the transaction, and Rabinovich arranged for the return of his money and some other personal items via a courier. Rabonovich also voluntarily turned over a hard drive that she located at her residence amidst FITZPATRICK's other items.

23.    Additionally, on March 19, 2017, investigators interviewed Ryan Fitzpatrick, FITZPATRICK's son, regarding items that were at the house before the fire occurred. Ryan Fitzpatrick is a juvenile and was accompanied by his mother for the duration of the interview. He was shown the picture of the aforementioned computer, monitor and printer that were located in his father's detached garage during the consent search. Ryan Fitzpatrick advised that the computer tower belonged to him and was in his bedroom at the Emerald Court house. He stated the last time he observed his computer in his bedroom was on Wednesday, March 8, 2017, two days prior to the house fire, when he left the house to stay with his mother because his father was having foot surgery. He also advised the monitor and printer in the detached garage belong in his father's home office that was located at the Emerald Court house. Ryan Fitzpatrick told investigators that he and a friend went downstairs in the Emerald Court house, and the leather couch that had been there had been removed, and there was just an open space. Several days or so later, Ryan advised, an older plaid couch from the Virginia home had been placed in the basement of the Emerald Court home, where the open space had been and where the expensive leather couch had previously been located. Ryan Fitzpatrick was asked about the contents of the Emerald Court house before he left to stay with his mother. Ryan Fitzpatrick advised that in the time before the fire, his father described his behavior as de-cluttering, and he and his father packed up several toys and other household items to support this effort. When asked about sentimental items, Ryan Fitzpatrick

USAO-000478

advised that his father packed up his trophies from his racing competitions and stored them in a box on the floor. At the end of the interview, your affiant asked Ryan if he went to the shooting range with his father. Ryan Fitzpatrick confirmed that he accompanied his father to the shooting range and he only saw and fired the "AR."

24.    During follow-up correspondence with Linda Rabinovich, she advised Detective Delbusso that FITZPATRICK was very proficient with technology (computers, etc.). She stated that she and FITZPATRICK went on several vacations over the past eighteen (18) months, and she never observed FITZPATRICK take his children's sentimental pictures and handmade cards on their vacations. She advised that he always kept those items in his home office at the Emerald Court house.

25.    On March 21, 2017, at approximately 0755 hours, Howard County Police Detective Byer met with Rabinovich at her residence to retrieve additional items of property. Rabinovich escorted him to her garage and handed him a box for a Nikon D7200 camera (HCPD Evidence # 5730-25). The serial number for the camera was placed on a sticker on the bottom of the box and recorded. Detective Byer did not open the box, and Rabinovich advised that she had examined the contents of the box and the box only contained camera equipment. Rabinovich advised Detective Byer that there was a memory card inside the camera containing 800 pictures and the images she saw appeared to have been taken at the racetrack. This item was transferred to the custody of the ATF and has remained unopened pending the execution of a search warrant.

26.    On March 23, 2017, your affiant applied for and received a federal search warrant for the Moneta "lake house" residence. A search of the residence resulted in the recovery of numerous items--specifically documents, photographs, sentimental items, and household items believed to have been located in the Emerald Court residence. Investigators took numerous

14

USAO-000479

photographs of items that were stored both inside the residence, and in the detached garage of the residence at the Moneta location.

27.    Additionally, during the execution of the warrant, several investigators were tasked to leave the scene to interview Damian Adam Harless, who lives in close proximity to this location, and who investigators learned was FITZPATRICK's friend.   During the interview, Harless admitted to investigators that FITZPATRICK called him and requested that he remove ammunition and pre-printed checks from the Moneta residence.   This request occurred after FITZPATRICK's arrest for the aforementioned firearm and ammunition, and prior to the execution search warrant.   Harless abandoned these items to law enforcement—specifically, a box of pre-printed checks in the name of Century Enterprises, AR-15 thirty (30) round magazines, and several rounds of .223 ammunition.   Harless advised the agents that FITZPATRICK told him that the ammunition belonged to "Jon" (referring to Jonathan Weizman).

28.    Through subsequent interviews of witnesses conducted after the first search, it was determined that FITZPATRICK moved several items out of the Emerald Court residence to the Moneta residence.  This fact was confirmed by witness accounts of where particular property items were previously located, along with the approximate time of their observations of these items.

29.    On April 4, 2017, ATF Digital Media Collection Specialist (DMCS) Troy Dannenfelser was requested to assist your affiant with processing digital evidence based upon a state search warrant.  The devices seized during the March 14, 2017 and March 19, 2017 visits to Linda Rabinovich's home were processed pursuant to a Howard County state search warrant applied for and obtained by Howard County Police Detective Marc Delbusso.  The black tower computer seized at that time was included on the search warrant but was not searched, and is being requested to be searched on this application.  The documents, files, paperwork and backpack seized

15

on March 14, 2017, were not searched and are also being requested to be searched in this application.

30.    On or about April 13, 2017, your affiant was advised by Detective Delbusso that Linda Rabinovich had made arrangements with FITZPATRICK to return his property items that were still at her residence. Your affiant contacted Rabinovich to get the details of the transaction. Rabinovich advised she was to meet Jonathan Weizman at a location in Pikesville, Maryland to return the items. Your affiant escorted Rabinovich to the designated location, where she gave Weizman various items of property. The exchange took approximately five minutes and took place without incident. Rabinovich also brought a computer that was stored at her house. Rabinovich originally thought it was a family computer, until she looked at it and determined that it must have belonged to FITZPATRICK. Rabinovich voluntarily abandoned the computer to these agents and completed the appropriate ATF evidence form. This computer (specifically one (1) HP Pavilion Entertainment PC with serial # CNF00352ZB) was placed in ATF custody and not analyzed pending the application and receipt of a search warrant.

31.    On May 18, 2017, your affiant applied for and received a federal search warrant for the Emerald Court property to include all outbuildings and trailers. When investigators searched the outbuilding/pole barn toward the rear of the Emerald Court property, they did not observe FITZPATRICK's son's computer which was previously observed by law enforcement days after the fire, and which Ryan Fitzpatrick confirmed was in his room two days prior to the fire. (It should be noted that this computer has not been recovered yet and was claimed by FITZPATRICK for insurance purposes in his Examination Under Oath in June 2017 in connection with an insurance claim for losses from the fire.)

32.    On May 19, 2017, investigators with the ATF, the Howard County Police

16

USAO-000481

Department and the Howard County Office of the Fire Marshal executed a federal search warrant at the current residence of FITZPATRICK located at 10000 Town Center Drive, Unit 465, Columbia, Maryland. At the time of the warrant, FITZPATRICK was present at the apartment and was advised of the purpose of the search. FITZPATRICK advised he would comply with law enforcement. Your affiant advised FITZPATRICK that she did not intend to seize his cell phone at the time; however, she needed to look through the information on the screen, and throughout the photographs and applications. (Note: The search warrant for the apartment was executed in conjunction with a search warrant for FITZPATRICK's person, which included his cell phone.) FITZPATRICK provided your affiant with the passcode to enter into his phone. The phone was given to a digital media specialist to conduct an onsite download of the information. Investigators were able to recover pertinent items from the phone, so it was determined that the phone would be seized, rather than returned to FITZPATRICK. The search warrant of the apartment resulted in the recovery of blueprints for the Emerald Court property, financial documents, other records and paperwork. Additionally, investigators seized family photographs, checks, and electronic devices, which included: FITZPATRICK's Samsung Galaxy cell phone, one Motorola Verizon black cell phone, one Apple iPhone Model 1687 FCC ID #BCG-E2944A, two (2) SD cards, one black Samsung tablet with IMEI 990006001702934, and one HP Envy laptop serial number 5CG6504M46. These items were seized and placed in the ATF Evidence Vault pending a subsequent search warrant.

33.    In a review of FITZPATRICK's cell phone (obtained via search warrant), investigators were able to capture a portion of text message correspondence in which FITZPATRICK asked his employee Jonathan Weizman about the status of a shotgun. FITZPATRICK also advised Weizman to try and not to discuss the "lake house" when he

17

(Weizman) talked to police about the fire. The text message correspondence was conducted through a mobile application that facilitates encrypted communications on or about March 12, 2017. (It should be noted that a shotgun or portions thereof have not been recovered by law enforcement, and the "lake house" property was the location where items were moved by FITZPATRICK prior to the fire.)

34.    On June 14, 2017, in accordance to Allstate policy, FITZPATRICK was required to conduct an Examination Under Oath pursuant to the insurance claim on the Emerald Court property. This examination was conducted by counsel contracted by the Allstate Insurance Company, and FITZPATRICK was present with his attorney. Investigators were later able to obtain the transcript for the Examination Under Oath, and noticed that FITZPATRICK was accountable for several misrepresentations--specifically, those statements regarding financial items, unpaid taxes, as well as his claim for several items which were determined to have been undamaged and removed from the Emerald Court residence prior to the fire. On or about August 30, 2017, your affiant learned that Allstate officially denied FITZPATRICK's insurance claim for the house and contents.

35.    During the course of the investigation, investigators learned that FITZPATRICK utilized two cell phones, and the phone number to one of those phones was unknown, even to family members. On August 31, 2017, Rabinovich checked the contacts listed in her personal cell phone under FITZPATRICK's name and found a second telephone number, (443) 869-1647. Through legal process, your affiant subsequently obtained records maintained by the cellular service provider for this telephone number, which confirmed that the subscriber associated with the number between February 11, 2015 and June 30, 2017, was "Mike Fitzpatrick," residing at 11910 Emerald Lane, Ellicott City, Maryland.

USAO-000483

36.    The records revealed further that FITZPATRICK, using (443) 869-1647, made/received approximately six (6) calls in October 2016, nine (9) calls in November 2016, six (6) calls in December 2016, seventeen (17) calls in January 2017, and nineteen (19) calls in February 2017. On February 28, 2017, FITPATRICK, using (443) 869-1647, had contact with an individual with the number (443) 219-1609. Subsequent to this call, there were no calls observed between (443) 869-1647 and (443) 219-1609 until March 10, 2017, the day of the fire at Emerald Court. Furthermore, regarding FITZPATRICK's (443) 869-1647 number, approximately nine (9) calls were recorded in March, five (5) in April, and two (2) in May.

37.    Because of the length of time that elapsed between February and March without calls, and because the phone calls resumed on the day of the fire with the same individual using the call number (443) 219-1609, with whom the calls ceased in February, there is probable cause to believe that FITZPATRICK made communications about the fire or insurance coverage using (443) 869-1647 between January and March 2017, during which time the volume of calls made using this call number increased substantially. These communications would constitute evidence of the crimes under investigation. Information concerning these communications are stored by Verizon Wireless.

38.    On September 14, 2017, investigators applied for, obtained, and executed an additional federal search warrant at the Moneta residence. Investigators were able to recover numerous items that were determined via interviews and witness accounts that had been moved from the Emerald Court residence prior to the fire. The search resulted in the recovery of Nest thermostats, electronic gaming items, furniture and household items, and a GoPro camera containing an SD card. These items were seized and placed in the ATF and Howard County Evidence Vaults pending the application and receipt of a search warrant.

USAO-000484

## CRIMINAL HISTORY / INTERSTATE NEXUS

39.     Your affiant reviewed a certified copy of FITZPATRICK's criminal history, and consulted with counsel to confirm that FITZPATRICK is prohibited from possessing firearms and ammunition because he was found guilty of a crime punishable by a term exceeding one year.  A consultation with ATF Special Agent David Collier, who also serves as an interstate nexus expert, confirmed that the Tulammo ammunition seized from FITZPATRICK's trailer, and subsequently confirmed by FITZPATRICK as having ordered and owned it, is manufactured outside the state of Maryland, thereby affecting interstate commerce.

40.     After the original interview with FITZPATRICK, and at the onset of scene processing, it was learned that the residence located at 11910 Emerald Court, Ellicott City Maryland was also used as FITZPATRICK's commercial business location.  FITZPATRICK's business, RMF Inc., specialized in landscaping and snow removal, and investigators learned via witness statements that FITZPATRICK operated his business out of this home office.  Several large trucks with the RMF logo/placard were located in the driveway of the residence, as well as snow removal equipment, tools, construction vehicles and supplies.  Your affiant witnessed workers arrive at the Emerald Court location two days after the fire and equip the company trucks with supplies, and leave for job sites.  Investigators learned through interviews with neighbors that FITZPATRICK was called to court and county meetings in reference to the noise and chaos produced by the commercial vehicles.  Public records indicate, and FITZPATRICK confirmed in his post-Miranda interview, that he had applied for a variance with the county for the use of his property as a commercialized zone, and FITZPATRICK claimed he had a successful meeting with local representatives in reference to the variance the Wednesday before the fire.  Your affiant reviewed public records for Howard County in which FITZPATRICK was assigned a case for said

20

variance in which he cited the Emerald Court address as conditional use of a home-based contractor.

41.    Allstate Insurance is headquartered outside the State of Maryland.

## CONCLUSION

42.    Your affiant makes this affidavit in support of the following:

a.    a search and seizure warrant for the files, documents, computers, and electronics described in Attachment A-1, which were seized from, or were located at, Linda Rabinovich's residence in Pikesville, Maryland on March 14 and March 21, 2017; from Rabinovich on April 13, 2017; and from the residence of Michael FITZPATRICK in Columbia, Maryland on May 19, 2017; and

b.    a search and seizure warrant for information, including communications made between January 1, 2017, and March 31, 2017, associated with the call number (443) 869-1647, as described in Attachment A-2.

43.    Based on the information herein, your affiant submits that there is probable cause to believe that Michael FITZPATRICK has violated, and conspired to violate, 18 U.S.C. § 844(i),(n) (malicious destruction of property by fire and conspiracy); 18 U.S.C. § 844(h),(m) (use of fire to commit a federal felony and conspiracy); 18 U.S.C. §§ 1343 and 1349 (wire fraud and conspiracy); and 18 U.S.C. § 922(g) (prohibited person in possession of ammunition). Your affiant respectfully submits there is probable cause to believe the electronics and documents (stored in preparation for a search warrant) listed in Attachment A-1 and information stored by Verizon Wireless described in Attachment A-2 contain evidence, fruits, and/or instrumentalities of the aforementioned criminal violations.

44.    This Court has jurisdiction to issue the requested search warrant for stored

21

communications pursuant to 18 U.S.C. § 2703 because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Your affiant anticipates executing this warrant by using it to require Verizon Wireless to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B-2. Upon receipt of the information described in Section I of Attachment B-2, government-authorized persons will review that information to locate the items described in Section II of Attachment B-2. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Clare Jeppi
Special Agent, ATF

Subscribed and sworn before me this 20 day of November, 2017.

The Honorable A. David Copperthite
United States Magistrate Judge

22

USAO-000487

17 - 3 1 5 2 - ADC

MJM

## ATTACHMENT A-1

### DESCRIPTION OF ITEMS TO BE SEARCHED

I.      The following items, which were seized by law enforcement on March 14, 2017, and are currently in the custody of the Bureau of Alcohol, Tobacco, Firearms & Explosives, located at 31 Hopkins Plaza, 5th floor, Baltimore, Maryland, 21201, and/or Howard County Police Department Evidence Vault, located at 3410 Court House Drive, Ellicott City, MD 21043:

- One (1) box of books and pictures (HCPD Evidence 5730-06),

- One (1) box of miscellaneous documents and papers (HCPD Evidence #5730-07)

- One (1) bag of miscellaneous papers (HCPD Evidence # 5730-08),

- One (1) black leather zipper binder (HCPD Evidence # 5730-01),

- One (1) backpack (HCPD Evidence # 5730-02).

- One (1) black leather portfolio with documents (HCPD Evidence # 5730-15)

- One (1) red backpack with personal items (HCPD Evidence # 5730-24).

II.     The following items, which were seized by law enforcement on March 14 and March 21, 2017, and are currently in the custody of the Bureau of Alcohol, Tobacco, Firearms and Explosives, located at 31 Hopkins Plaza, 5th floor, Baltimore, Maryland, 21201:

- One (1) black tower computer;

- One (1) Nikon D7200 camera with serial number 2589732.

III.    The following item, which was seized by law enforcement on April 13, 2017, and is currently in the custody of the Bureau of Alcohol, Tobacco, Firearms and Explosives at 31 Hopkins Plaza, 5th floor, Baltimore, Maryland 21201:

- One (1) HP Pavilion Entertainment PC with serial # CNF00352ZB.

IV.     The following items, which were seized by law enforcement on May 19, 2017,

17 - 3 1 5 2 - ADC

and are currently in the custody of the Bureau of Alcohol, Tobacco, Firearms and Explosives at

31 Hopkins Plaza, 5th floor, Baltimore, Maryland 21201:

- One (1) Verizon black Droid cell phone

- One (1) Apple Iphone Model A1687 FCC ID #BCG-E2944A;

- Two (2) SD cards;

- One (1) black Samsung tablet with IMEI 990006001702934;

- One (1) an HP Envy laptop serial number 5CG6504M46;

V.      The following item, which was seized by law enforcement on September 14, 2017,

and is currently in the custody of the Bureau of Alcohol, Tobacco, Firearms and Explosives,

located at 31 Hopkins Plaza, 5th floor, Baltimore, Maryland, 21201:

- One (1) GoPro Hero 2 camera containing one (1) SD card.

17 - 3 1 5 2 - ADC

## ATTACHMENT B-1

### ITEMS TO BE SEIZED

I.    **Information to be Seized by Law Enforcement Personnel**

The following items, which constitute fruits, evidence and instrumentalities of criminal violations of 18 U.S.C. § 844(i),(n) (malicious destruction of property by fire and conspiracy); 18 U.S.C. § 844(h),(m) (use of fire to commit a federal felony and conspiracy); 18 U.S.C. §§ 1343 and 1349 (wire fraud and conspiracy); and 18 U.S.C. § 922(g) (prohibited person in possession of ammunition), may be seized upon inspection of the locations listed in Attachment A-1:

1. Any and all U.S. currency and financial records;

2. Any and all books, records, and documents including but not limited to appointment books, diaries, calendars, work schedules, phone numbers, email addresses, and real property addresses;

3. Any and all cellphones, PDAs, smart phones, computers, or other electronic storage devices;

4. Any and all photographs, including still photos, negatives, video recordings, films, undeveloped film and the content therein, slides, including but not limited to photographs of controlled dangerous substances.

5. Any and all records, documents, and materials pertaining to identification, including but not limited to: birth certificates; driver's licenses; photo identification cards; passports; Social Security cards; and any use or application for these items.

6. Any and all receipts for packages or letters sent or received via Federal Express, United States Postal Service, United Parcel Service or similar companies;

7. Any and all firearms, ammunition, firearms parts, components, correspondence, books, manuals, packaging;

8. Any and all books, records, documents, and other items related to or memorializing the purchase, sale, transfer, transportation, storage, packaging, and use of firearms, ammunition, including but not limited to sales, log books, ledgers, telephone and address books, rolodexes, telephone answering pads, bank and financial records, records relating to domestic and foreign travel such as tickets, passports, visas, credit card receipts, travel schedules, receipts and records, trucker log books and storage records, such as storage locker receipts and safety deposit box rental records;

17 - 3 1 5 2 - ADC

9. Any and all of the above mentioned books, records, documents, and other items reflecting names, addresses, telephone numbers, pager numbers, fax numbers, and/or telex numbers of possible co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists;

10. Any and all articles of personal property documenting or evidencing the existence of conspiracies to commit arson and/or insurance fraud;

11. Any and all records, documents, and materials reflecting research on insurance coverage, insurance fraud, residential and vehicle fires and arson, and related matters;

12. Any and all articles of property documenting or evidencing the purchase, sale, possession, transfer, transport, storage, package, and use of firearms, ammunition, including but not limited to tools for manufacture;

13. Any and all photographs, including still photos, negatives, video recordings, films, undeveloped film and the content therein, slides, including but not limited to photographs of firearms, ammunition, and personal items from 11910 Emerald Court, Ellicott City, Maryland or photographs of said address;

14. Any and all safes and contents, locked boxes and contents, cardboard firearm boxes and other receptacles that could contain firearms, ammunition, serial numbers and/or currency;

15. Any and all articles of personal property evidencing or containing the evidence of the obtaining, secreting, transfer, expenditure and/or the concealment of money and assets derived from committing the crime of arson and/or insurance fraud, or to be used in the sale of firearms and/or ammunition, including books, receipts, records, bank statements and records, business records, money drafts, money orders, wire transfer receipts, and cashier's check receipts, passbooks, bank checks, safes, records of safety deposit boxes and storage lockers;

16. Any and all proceeds and articles of personal property which are the fruits, instrumentalities, and evidence of possession of firearms and/or ammunition, and the crime of arson and/or insurance fraud, including currency, precious metals and stones, jewelry, negotiable and financial instruments;

17. Any and all articles of personal property or which bear sentimental value which are the fruits, instrumentalities, and evidence of committing the crime of arson and/or insurance fraud; including, but not limited to trophies, awards, certificates, photographs, artwork, furniture, household items, items associated with racing and/or the purchase of race cars and/or other vehicles, and/or items which investigators have learned have moved from 11910 Emerald Court, Ellicott City, Maryland to this location in an effort to elude law enforcement or insurance investigators;

USAO-000451

18. Any and all documents indicating ownership of vehicles, conveyances, other properties, storage units, or other locations associated with FITZPATRICK or possible co-conspirators;

19. Any and all documents reflecting personal and business assets, debts, and financial liabilities.

## II.     Law Enforcement Search Protocol

1.      The law enforcement search of electronic devices listed in Attachment A-1 shall be conducted pursuant to the following protocol in order to minimize to the greatest extent possible the likelihood that files or other information for which there is not probable cause to search are viewed.

2.      With respect to the search of any digitally/electronically stored information provided to law enforcement by forensic analysis, the search procedure by law enforcement may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein, while permitting government examination of all the data necessary to determine whether that data falls within the items to be seized):

   a.      surveying various file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized;

   b.      opening or reading portions of files in order to determine whether their contents fall within the items to be seized;

   c.      scanning storage areas to discover data falling within the list of items to be seized, to possibly recover any such deleted data, and to search for and recover files falling within the list of items to be seized; and/or

   d.      performing key word searches through all electronic storage areas to determine whether occurrence of language contained in such storage areas exist that are likely to appear in the evidence to be seized.

17 - 3 1 5 2 - ADC

3.     If after performing these procedures, the directories, files or storage areas do not reveal evidence of the above listed crimes or other criminal activity, the further search of that particular directory, file or storage area, shall cease.

USAO-000453